**STUART F. DELERY**
ASSISTANT ATTORNEY GENERAL
United States Department of Justice
Civil Division
**MICHAEL S. BLUME**
Director, Consumer Protection Branch
United States Department of Justice
Civil Division
**CHRISTOPHER E. PARISI**
Trial Attorney
Christopher.E.Parisi@usdoj.gov
**WENDY J. OLSON, IDAHO STATE BAR NO. 7634**
UNITED STATES ATTORNEY
**SYRENA C. HARGROVE, IDAHO STATE BAR NO. 6213**
Assistant United States Attorney
District of Idaho
800 E. Park Blvd., Suite 600
Boise, Idaho 83712-7788
Telephone: (208) 334-1211
Facsimile: (208) 334-9375
Syrena.Hargrove@usdoj.gov

ATTORNEYS FOR: UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. |
| GREGORY T. TROOST, an individual, doing business as T & T CATTLE and T & T CATTLE PEARL, and MARK A. MOURTON, an individual, | ) | <u>CONSENT DECREE OF PERMANENT INJUNCTION</u> |
| Defendants. | ) | |

Plaintiff, the United States of America, by its undersigned attorneys, having filed a Complaint for Permanent Injunction against Defendants Gregory T. Troost, doing business as T & T Cattle and T & T Cattle Pearl, and Mark A. Mourton (collectively, "Defendants"), and Defendants having appeared and consented to the entry of this Consent Decree of Permanent Injunction ("Decree"), without contest and before any testimony has been taken, and the United States of America having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. This Court has jurisdiction over the subject matter of this action and personal jurisdiction over all parties to this action pursuant to 28 U.S.C. § 1345 and 21 U.S.C. § 332.

2. The Complaint for Permanent Injunction states a cause of action against Defendants under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq. ("the Act").

3. Defendants violated the Act, 21 U.S.C. § 331(a), by causing to be introduced and to be delivered for introduction, into interstate commerce, food that is adulterated within the meaning of 21 U.S.C. §§ 342(a)(2)(C)(ii) and 342(a)(4). Defendants also violated 21 U.S.C. § 331(k), by causing new animal drugs to become adulterated under 21 U.S.C. § 351(a)(5), while the drugs are held for sale after shipment in interstate commerce.

4. Defendants and each and all of their officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them who have received notice of this Decree, are hereby permanently restrained and enjoined, under the provisions of 21 U.S.C. § 332(a), and the inherent equity authority of this Court, from directly or indirectly: introducing and causing to be introduced into interstate commerce, and delivering and causing to be delivered for introduction into interstate commerce, any article of food, within the meaning of 21 U.S.C. § 321(f), excluding milk; and, subject to paragraph 5, administering any new animal drug, as defined in 21 U.S.C. § 321(v), to any animal while such drug is held for sale after shipment in interstate commerce, unless and until:

    A. Defendants have established and implemented a system that ensures that each of the animals that they acquire, purchase, hold, transport, sell, consign, or lease is individually and permanently identified by tag number;

    B. Defendants have established and implemented a written record-keeping system that prevents them from selling, consigning, leasing, or distributing any animals whose edible tissue contains new animal drugs in amounts above the levels permitted by law. This system shall include, but not be limited to, keeping written records on every animal to which Defendants

administer drugs. These records shall include, at a minimum: (1) the identity of each animal that Defendants medicate; (2) the date of each administration of each medication to each animal; (3) the name of each drug administered; (4) the dosage of each drug administered; (5) the route of administration of each drug used; (6) the lawful written order of a licensed veterinarian within the context of a veterinarian-client-patient relationship for each drug used, if applicable; (7) the name of the person administering each drug; (8) the proper withdrawal period for each drug administered; (9) the date such withdrawal period will terminate for each drug administered; (10) the date each medicated animal is shipped for slaughter or leaves Defendants' control; and (11) the name and address of the purchaser, recipient, lessee, or consignee of each medicated animal that is shipped for slaughter or leaves Defendants' control;

C. Defendants have established and implemented a system that ensures that their use of new animal drugs conforms to the uses approved by the United States Food and Drug Administration ("FDA") as set forth in the drugs' approved labeling or, for new animal drugs used in an extra-label manner, to the lawful written orders of a licensed veterinarian and in compliance with 21 U.S.C. § 360b(a)(4)(A) and 21 C.F.R. Part 530. This system shall include, at a minimum, measures to

4

prevent: (1) the use of drugs in Defendants' animals that are not approved for use in that species or not approved for the disease or other condition for which the animal is being medicated, unless such use is in accordance with the lawful written order of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship and is in compliance with 21 C.F.R. Part 530; (2) the administration of drugs in excess of the approved dosage, unless such administration is in accordance with the lawful written order of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship and is in compliance with 21 C.F.R. Part 530; (3) the administration of drugs by a non-approved route unless such administration is in accordance with the lawful written order of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship and is in compliance with 21 C.F.R. Part 530; and (4) the sale and delivery for slaughter of medicated animals before the expiration of the withdrawal period, as specified in the approved labeling or, for new animal drugs used in an extra-label manner, in the lawful written order of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship and in compliance with 21 C.F.R. Part 530;

D. Defendants have established and implemented a drug inventory and accountability system that prevents them from

selling, consigning, leasing, or delivering any animals with illegal new animal drug residues. This system shall include a written record for each drug that Defendants purchase or receive for medicating any of their animals, which record shall include, at a minimum: (1) the name of the drug; (2) the date of purchase or receipt of the drug; (3) the quantity, strength, and form of the drug; (4) the expiration date of the drug; (5) the name and address of the supplier or seller of the drug; (6) the date each drug is administered; and (7) the amount and method of each administration of each drug. In addition, the inventory and accountability system shall include periodic checks of inventory and records, no less frequently than once every fourteen (14) calendar days, to ensure that the records accurately document the drugs currently on hand and the disposition of all drugs purchased or received;

E. Defendants have established and implemented a quarantine or segregation system that ensures ready distinction between medicated and unmedicated animals and that prevents Defendants from selling, consigning, leasing, or delivering for slaughter for use as food any animal with illegal new animal drug residues;

F. Defendants have established and implemented a system that ensures that each animal that has been medicated is not directly or indirectly sold, consigned, leased, or delivered

6

for immediate or ultimate slaughter before expiration of the withdrawal period (specified in the approved labeling or, for new animal drugs used in an extra-label manner, in the lawful written order of a licensed veterinarian and in compliance with 21 U.S.C. § 360b(a)(4)(A) and 21 C.F.R. Part 530). This system shall also ensure that each purchaser, recipient, lessee, or consignee receives, prior to accepting any animal, a written statement from Defendants certifying that any animal that has been medicated has also been withdrawn from drugs for the appropriate time period or that the animal has not been medicated. This written statement must also include the date(s) on which the animal was medicated, each drug with which the animal was medicated, the required withdrawal period for each drug, and the date(s) on which the withdrawal period(s) expired. Defendants shall, prior to selling, leasing, or otherwise transferring any animal, obtain the signature of the purchaser, recipient, lessee, or consignee documenting date of receipt of the statement from Defendants. Defendants shall keep, as part of their records, a copy of the signed written statement described in this paragraph;

      G. Defendants have established and implemented a system to identify the source of each animal that they purchase or otherwise receive, and ensure that Defendants obtain the following document(s) prior to taking possession of any animal:

(a) a signed written statement from the seller, transferor, or auction house certifying that the animal does not have illegal drug residues; or (b) a signed written statement from the seller, transferor, or auction house identifying the name of each drug administered to the animal, the date each such drug was administered to the animal, and the date on which the withdrawal period will expire. Defendants shall keep, as part of their records, a copy of the document(s) described in this paragraph 4(G);

H. Defendants have reported to FDA in writing the steps they have taken to comply with paragraphs 4(A)-(G);

I. FDA has inspected Defendants' operations, including all records relating to the medication, purchase, sale, consignment, and distribution of food-producing animals;

J. Defendants have paid for the costs of the inspections, as described in paragraph 13; and

K. FDA has notified Defendants in writing that they appear to be in compliance with the requirements of paragraphs 4(A)-(H) and (J) of this Decree.

5. Prior to obtaining written notification of compliance from FDA as specified in Paragraph 4(K), Defendants may administer drugs as prescribed to an ill, food-producing animal that they own and that is located on their farm, but only after the animal has been examined by a licensed veterinarian and that

veterinarian has diagnosed and prescribed the particular drug for that animal or after a licensed veterinarian during this period has provided a prescription for the particular drug for unexamined animals exhibiting the same symptoms as the examined animal, and Defendants or their employees have observed and documented the occurrence of these symptoms. Defendants shall submit copies of each veterinarian's diagnosis, prescription, and receipts for treatment of each animal or the equivalent to FDA within ten (10) calendar days of treatment after receipt from the veterinarian.

6. Defendants shall maintain all records described in paragraph 4 for each animal for a period of at least two (2) years after the date that Defendants sell, consign, deliver, or lease the animal for slaughter. These records shall be made available immediately to FDA upon request for purposes of inspection and copying.

7. Within fifteen (15) calendar days after the entry of this Decree, Defendants shall: (a) provide a copy of the Decree, by personal service or by certified mail, return receipt requested, to each and all of Defendants' officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them, and all persons to whom Defendants have sold, consigned, or delivered any cattle or calves for slaughter

within one (1) year preceding the date of entry of the Decree; and (b) explain the terms of the Decree to each of Defendants' employees.

8. Within twenty (20) calendar days after the entry of this Decree, Defendants shall provide to FDA an affidavit from a person with personal knowledge of the facts therein, stating the fact and manner of Defendants' compliance with paragraph 7 and identifying the names and positions of all persons who were notified pursuant to paragraph 7.

9. After entry of the Decree, Defendants shall, within five (5) calendar days of employment of any new employee at Defendants' operations: (a) provide a copy of the Decree, by personal service or by certified mail, return receipt requested, to all such employees; and (b) explain the terms of the Decree to all such employees.

10. After Defendants receive written notification from FDA as specified in paragraph 4(K), Defendants and each and all of their officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them, are permanently restrained and enjoined from directly or indirectly doing or causing to be done any of the following acts:

   A. Introducing and delivering for introduction into interstate commerce any article of food, within the meaning of

21 U.S.C. § 321(f), that is adulterated under 21 U.S.C. §§ 342(a)(2)(C)(ii) or 342(a)(4);

      B. Administering to any food-producing animal any article of drug, including, but not limited to, any new animal drug, as defined in 21 U.S.C. § 321(v), unless such administration is in a manner that conforms to such drug's labeled indications and conditions for use or, for new animal drugs used in an extra-label manner, such administration is by or on the lawful written order of a licensed veterinarian within the context of a valid veterinarian-client-patient relationship and in compliance with 21 C.F.R. Part 530;

      C. Doing any act with respect to any article of drug, including, but not limited to, any new animal drug, as defined in 21 U.S.C. § 321(v), if the act is done while such drug is held for sale after shipment in interstate commerce and results in such drug being adulterated within the meaning of 21 U.S.C. § 351(a)(5); and

      D. Failing to implement and continuously maintain the requirements of this Decree.

11. FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' operations, including any new location, and any location at which Defendants hold or store drugs used to medicate animals and, without prior notice, to take any other measures necessary

to monitor and ensure continuing compliance with the terms of this Decree and the Act. Such inspections may, at FDA's discretion, include the taking of photographs, videotape recordings, and samples, and the examination and copying of all records that relate to purchasing and administering drugs and holding, delivering, selling, consigning, or distributing animals at any location Defendants operate, manage, or control. Such inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials. Such inspection authority granted by this Decree is apart from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

12. Upon request, Defendants shall promptly provide any information and records to FDA regarding the sale, consignment, delivery, or medication of any animal.

13. Defendants shall reimburse FDA for the costs of conducting and evaluating all inspectional, laboratory, and analytical, and other work that FDA deems necessary to evaluate the Defendants' compliance with any part of this Decree at the standard rates prevailing at the time that the activities are accomplished. As of the date of entry of this Decree, these rates are: $87.57 per hour and fraction thereof per representative for inspection and supervision work other than laboratory and analytical work; $104.96 per hour and fraction

thereof per representative for laboratory and analytical work; $0.565 per mile for travel by automobile; the government rate or equivalent for travel by air; and the published government per diem rate or the equivalent, for the areas in which the inspections are performed, per representative for subsistence expenses where necessary. In the event that the standard rates generally applicable to the FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court. Upon Defendants' request, FDA will submit a reasonably detailed bill of costs to Defendants.

14. If any Defendant violates this Decree and is found in civil or criminal contempt thereof, that Defendant shall, in addition to other remedies, reimburse Plaintiff for its attorneys' fees, travel expenses incurred by attorneys and witnesses, expert witness fees, investigational and analytical expenses, and court costs relating to such contempt proceedings.

15. If, based on the results of any inspection or analysis conducted after the inspection described in paragraph 4(I) or any other information, FDA finds that any Defendant is not in compliance with the requirements of this Decree, the Act, and FDA regulations, FDA may, as and when it deems necessary, notify Defendants in writing of the non-compliance and may require that

Defendants immediately take one or more of the following actions:

    A. Cease selling and delivering, and causing to be sold and delivered, any article of food within the meaning of 21 U.S.C. 321(f);

    B. Cease administering to animals any drug, including, but not limited to, any new animal drug, as defined in 21 U.S.C. § 321(v), except under the terms specified in paragraph 5; and

    C. Take any other corrective actions as FDA deems necessary to bring Defendants into compliance with this Decree, the Act, and FDA regulations.

Upon receipt of such notification, Defendants shall immediately and fully comply with the terms of the notice. Any cessation of operations or other action ordered by FDA as described above shall continue until Defendants receive written notification from FDA that Defendants appear to be in compliance with the terms of this Decree, the Act, and FDA regulations, and that they may resume operations.

16. Defendants shall notify FDA at least thirty (30) calendar days before any change in ownership, name, or character of the business that occurs after the entry of this Decree, such as reorganization, relocation, assignment, or sale of the business that may affect compliance obligations arising out of

this Decree. Defendants shall serve a copy of this Decree on any prospective successor or assignee at least thirty (30) calendar days prior to such sale or change of business, and shall furnish to FDA an affidavit of compliance with this paragraph within fifteen (15) calendar days of such sale or change of business.

17. All notifications, correspondence, and communications to FDA required by this Decree shall be submitted to the Director, FDA Seattle District Office, 22215 26th Ave. SE, Suite 210, Bothell, Washington 98021.

18. All decisions specified in this Decree shall be vested in the discretion of FDA. FDA's decisions shall be final and, if challenged, shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review shall be based exclusively on the written record before FDA at the time the decision was made. No discovery shall be taken by either party.

19. If any Defendant fails to comply with the provisions of this Decree, Defendant Gregory T. Troost shall pay to the United States of America liquidated damages in the sum of one thousand dollars ($1,000.00) for each day that the Defendant fails to comply with this Decree and an additional five thousand dollars ($5,000.00) for each animal that the Defendant sells or delivers for sale in violation of this Decree. Defendants

understand and agree that the liquidated damages specified in this paragraph are not punitive in nature and that they do not in any way limit the ability of the United States of America to seek, and the Court to impose, additional criminal or civil contempt penalties based on conduct that may also be the basis for the payment of liquidated damages.

20. If Defendants petition the Court for relief from this Decree and, at the time of the petition, in FDA's judgment, Defendants have maintained a state of continuous compliance with laws and regulations, the Act, and this Decree for the preceding sixty (60) months, Plaintiff will not oppose such petition.

21. This Court retains jurisdiction of this action and the parties hereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary and appropriate.

**APPROVED AND ORDERED** this _____ day of _____, 2013.

---
UNITED STATES DISTRICT JUDGE

Agreed and Consented to by and on behalf of Plaintiff UNITED STATES OF AMERICA:

STUART F. DELERY
ASSISTANT ATTORNEY GENERAL
U.S. Department of Justice
Civil Division

| | |
|---|---|
| MICHAEL S. BLUME<br>Director, Consumer Protection Branch<br><br>By: *(signature)*<br>_____<br>CHRISTOPHER E. PARISI<br>Trial Attorney<br>P.O. Box 386<br>Washington, D.C. 20044<br>Telephone: (202) 598-2208<br>Facsimile: (202) 514-8742<br>Christopher.E.Parisi@usdoj.gov | WENDY J. OLSON<br>UNITED STATES ATTORNEY<br><br><br>By: *(signature)*<br>_____<br>SYRENA C. HARGROVE<br>Assistant U.S. Attorney<br>District of Idaho<br>800 E. Park Blvd., Suite 600<br>Boise, Idaho 83712-7788<br>Telephone: (208) 334-1211<br>Facsimile: (208) 334-9375<br>Syrena.Hargrove@usdoj.gov |

Of Counsel:

WILLIAM B. SCHULTZ
General Counsel

ELIZABETH H. DICKINSON
Associate General Counsel
Food and Drug Division

ANNAMARIE KEMPIC
Deputy Chief Counsel,
  Litigation

SON B. NGUYEN
ABRAM S. BARTH
Associate Chief Counsels
U.S. Dept. of Health & Human Services
Office of the General Counsel
Food and Drug Division
White Oak 32, Room 4397
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002

Agreed and Consented to by and on behalf of Defendants GREGORY
T. TROOST, D/B/A T&T CATTLE AND T&T CATTLE PEARL, AND MARK A.
MOURTON:

                                            Moffatt, Thomas, Barrett,
                                            Rock & Fields, Chartered

_____     By _____
GREGORY T. TROOST, in his     MICHAEL O. ROE – Of the Firm
  individual capacity, doing   Attorney for Defendants
  business as T & T CATTLE     101 S. Capitol Blvd., 10th
  and T & T CATTLE PEARL       Floor
                                 Post Office Box 829
                                 Boise, Idaho  83701

_____
MARK A. MOURTON, in his
  individual capacity